**UNITED STATES of America**

**v.**

**Keith Bryan WEBB.**

**No. EP–83–CR–172.**

United States District Court,
W.D. Texas,
El Paso Division.

Sept. 5, 1985.

Joseph Galenski, Mike McDonald, Asst. U.S. Attys., El Paso, Tex., for plaintiff.

Keith Bryan Webb, pro se.

## ORDER REGARDING ADMISSIBILITY OF PHYSICAL EVIDENCE

HUDSPETH, District Judge.

On August 11, 1983, a six-year old boy named Steve Marcel Wilson met his death on the military reservation at Fort Bliss, Texas. His body was buried in the desert, and his death was not reported to the authorities. About one o'clock in the morning of September 6, 1983, June Wilson Webb appeared at the Criminal Investigation Detachment (CID) office at Fort Bliss ostensibly to report that June Webb had been raped. Once June Webb was physically separated from Keith Webb, however, June stated that she had actually come to the CID office to report the death of her son, Steve Marcel Wilson, for which Keith Webb had been responsible. As soon as June Webb related this information, CID agents approached Keith Webb, who was

still waiting outside the office. When one of the CID agents stated that he desired to question Webb about a homicide, Webb fled into the darkness. Approximately six hours later, Webb was located near the top of a communications tower near the CID office. When the CID agents arrived at the tower, Webb shouted to them that, if they would get his wife and a priest, he would tell them where the body was buried. A vigil of several hours commenced, during which time Webb repeatedly stated that he would commit suicide by jumping from the tower. A military psychiatrist and a CID investigator trained in crisis negotiation were summoned to the scene. These two were elevated in a "cherry picker" crane to a position where they could communicate with Webb, and they engaged him in dialogue. In the conversation that ensued, Webb not only admitted that he had caused his son's death, but also furnished directions as to where the child's body had been buried. Specifically, he informed them that the burial site was in an area of the Fort Bliss military reservation known as McGregor Range, and that it lay a short distance to the right of a roadway, approximately a mile to a mile and a half after entering the Range (Tr. Hearing of 7/23/85, pp. 7–9).

The information obtained from Webb on the tower was relayed to CID Agent Thomas Wright, who organized a team to search for the body of Steve Marcel Wilson. At about 9:00 a.m. on September 6, 1983, approximately 15 CID and Military Police personnel went to McGregor Range to commence the search. From the description given by Webb, Wright and the others were able to narrow the search to a strip of desert approximately 5.8 miles in length and one mile in width, bounded by the Texas-New Mexico state line on the south, U.S. Highway 54 on the west, a paved road leading into McGregor Range on the north, and an unpaved road leading to a restricted area on the east (Tr. 13).

The searchers began their work at the northern end of this strip of land and moved southward. They discontinued their efforts at approximately 2:00 or 2:30 p.m.,

with plans to return the next day to continue the search. It was a part of their plan for the continuation of the search that they would seek additional personnel from the army units stationed at Fort Bliss to assist them the following day (Tr. 17–19; 37–8). The plan was aborted, however, because CID agents were informed later that same afternoon that Keith Webb had agreed to cooperate with FBI agents by leading them to the burial site. In the late afternoon of September 6, 1983, Webb did accompany the agents to the site and the remains of Steve Marcel Wilson were discovered.

Keith Webb was tried in January 1984, and was found guilty of one count of second degree murder and two counts of injury to a child. The conviction was reversed, however, by the United States Court of Appeals for the Fifth Circuit, *United States v. Webb,* 755 F.2d 382 (5th Cir.1985). In reversing, the Court of Appeals held that all the statements made by Webb to the FBI agents in the late afternoon of September 6 were inadmissible in evidence, and that the admission of these statements in the trial of Webb constituted reversible error. *United States v. Webb, supra* at 392. Webb's case was remanded to this Court for a new trial, with the following directions from the Court of Appeals:

> "... It is left to the district court to determine whether testimony regarding the body must be excluded in light of this opinion. Because the district court admitted Webb's statements, the issue of whether the physical evidence alone was admissible under some other theory was never presented at trial." *United States v. Webb, supra* at 390.

■ In urging the Court to admit in Webb's retrial evidence pertaining to the physical remains of Steve Marcel Wilson, the Government relies primarily upon the so-called "inevitable discovery" exception to the exclusionary rule. In *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the United States Supreme Court adopted and approved the "inevitable discovery" exception already rec-

ognized by most of the lower federal courts. See *Nix v. Williams, supra* at 104 S.Ct. 2507 n. 2; *United States v. Brookins,* 614 F.2d 1037, 1042, 1044 (5th Cir.1980).[1] When the Government relies upon this exception, it has the burden of demonstrating each of the following essential elements: (1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct; (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct, and (3) that the police prior to the misconduct were actively pursuing the alternate line of investigation. *United States v. Cherry,* 759 F.2d 1196, 1204 (5th Cir.1985); *United States v. Brookins, supra* at 1048.

■ After examining the testimony in this case, the Court concludes that the Government has sustained its burden of proving all three necessary elements. While still on the communications tower in the early morning of September 6, 1983, Keith Webb conveyed enough information[2] concerning the location of the child's body to allow the authorities to find it. No later than 9:00 a.m. on that date, CID agents and Military Police were actively pursuing the search for the body, armed with information which, in reasonable probability, would have led to its discovery. They had succeeded in narrowing the search down to a very small area of land, comprising no more than six square miles (Tr. 13). The grave site actually lay within this target area, and the search party had approached to within 2.8 miles of it when the first day's search was discontinued (Tr. 23). Compare *Nix v. Williams, supra* at 104 S.Ct. 2505, 2512 (child's body found 2.5 miles from where the search was stopped and within

the area to be searched).[3] Furthermore, a search party nearing the burial site could not have missed discovering the remains of Steve Marcel Wilson. The body had been only partially buried, and sand had been scooped up over it, resulting in a mound of dirt ten to twelve inches high (Tr. 59). The vegetation in the immediate area had been disturbed and uprooted, making the grave mound even more obvious (Tr. 59). The grave was not in a remote area; it lay only ten yards from Highway 54 and about seven feet from a dirt access road that paralleled the highway (Tr. 57; Gov. Ex. 2). The body had been partially uncovered by rain, wind, or digging animals, and a portion of the skull of the deceased was visible above ground (Tr. 59). Finally, a strong odor of decomposition was detectable at least 30 to 40 feet from the burial site (Tr. 58–9), and the smell alone would have led nearby searchers to the body. In short, the discovery of the remains of the victim in this case was at least as "inevitable" as the discovery of the child's body in *Nix v. Williams.* The Court finds that the search efforts already under way on September 6, 1983 would have resulted in the discovery of those remains, in substantially the same condition, within 24 hours even absent any further contact with, or directions from, the Defendant Keith Webb. The Defendant's motion to suppress all evidence pertaining to the physical remains of Steve Marcel Wilson should be denied.

It is therefore ORDERED that the Defendant's motion to suppress all evidence pertaining to the physical remains of the deceased be, and it is hereby, DENIED. The Court will admit in evidence testimony, photographs, and the results of scientific

---

1. The Fifth Circuit has pointed out that "inevitable discovery" is something of a misnomer. *United States v. Brookins, supra* at 1042 n. 2. To apply this exception to the exclusionary rule, the courts do not require absolute inevitability of discovery. The true test is whether a reasonable probability existed that the evidence in dispute would have been discovered in the absence of the tainted source of information. *United States v. Brookins, supra.*

2. The statements made by Webb from the communications tower have been found admissible by the Fifth Circuit. *United States v. Webb, supra* at 390–92.

3. Many of the facts in this case are strikingly similar to those in *Nix v. Williams,* even down to the "Christian burial" speech. *Nix v. Williams, supra,* 104 S.Ct. at 2505; *United States v. Webb, supra* at 386.

262

examinations and tests, if any, pertaining to these remains.